John TURNER and Ruby Carol Butcher, Appellants,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

May 13, 1977.

Lowell E. Spencer, Prestonsburg, for appellants.

Robert F. Stephens, Atty. Gen., B. F. Radmacher, III, Asst. Atty. Gen., Frankfort, for appellee.

Before HOWARD, LESTER, and PARK, JJ.

HOWARD, Judge.

The appellants were jointly indicted July 8, 1975, by the Floyd County grand jury

under Indictment No. 4253 charging a violation *Ky.Rev.Stat.* Ch. 242.230 and more specifically stated: "possession of alcoholic beverages for purposes of sale in local option territory". The appellants were found guilty by the jury on May 3, 1976, and their punishment was fixed at sixty (60) days in the county jail and a $100.00 fine.

The principal witness for the Commonwealth was Sheriff Joe Wheeler Lewis who testified that on July 8, 1975, he had in his possession a search warrant directing him to search the premises known as "Butcher's Market" and any vehicles found at that location in Floyd County. Sheriff Lewis, along with two deputies, proceeded to the location of Butcher's Market passing a car owned by the appellant, John Turner. Sheriff Lewis followed the car to the location of Butcher's Market and he observed Mr. Turner placing a case of beer on the ground and at the same time the Sheriff observed a white male of approximately 22 or 23 years of age with monies in his hand talking to John Turner. Sheriff Lewis then placed the appellant, John Turner, under arrest and proceeded into the market from which he had heard some noise. Upon entering the market, he observed the appellant, Ruby Carol Butcher, behind the counter breaking open two (2) fifths (5ths) of Maker's Mark liquor. The seals on the bottles were unbroken. Later on the Sheriff found a cooler behind the building with twenty-one (21) cans of beer in it. The appellants lived on the searched premises.

■ All parties concede that John Turner was drunk on this occasion and that the breathalizer test ran .22 and he paid a fine for the offense of drunken driving. The defense in the case rested upon the contentions of the appellants that all of this alcohol was the private property of John Turner and was not in their possession for the purpose of sale. The testimony of the deputies supported the testimony of the Sheriff in most respects and coupling this testimony with that indicating that the appellants were known "bootleggers", we conclude there was sufficient evidence to go to the jury and to sustain its verdict.

■ Next the appellants complain of the comments of the Commonwealth Attorney in regard to an affidavit submitted by the appellants, and sworn to by John Turner relative to the evidence that a couple of witnesses would testify to if they were present. The Commonwealth Attorney rebutted his testimony and commented in front of the jury to the effect that while it was agreed that the parties would testify as set out in the affidavit, if they were present, the Commonwealth did not concede that the statement was the truth. The appellants cite no authority which would indicate that this procedure was improper and prejudicial.

The appellants rightfully complain of the introduction of the search warrant and the affidavit for the search warrant. There was information written on the warrant by the Sheriff as to Turner's other offenses committed at the time. In the affidavit which was read to the jury the following appears:

On Monday, July 7, 1975, at approximately ten O'Clock P.M., he was informed by a male person that on July 3, 1975, at approximately five O'Clock P.M., he purchased from John Turner at Butcher's Market near the Jenny Wiley Dam, Floyd County, Kentucky one case of twelve ounces Schlitz Beer for which he paid said John Turner twelve dollars. I have known the informer for sometime and have received reliable information from the same person on several occasions before this date. I refuse to name the informer for fear of his future use, safety, and welfare.

■ This was Commonwealth's Exhibit # 1 and was signed by the Sheriff. This Court feels that the introduction of this search warrant and affidavit over the objections of the defendants-appellants was so prejudicial that we are compelled to reverse this case for a new trial. The manner in which this warrant and affidavit was brought before the jury amounts to permitting the jury to consider hearsay evidence involving incompetent and prejudicial matters. In *Vanmeter v. Commonwealth*, 232

Ky. 404, 23 S.W.2d 594 (1930), a similar set of facts to this case was involved and the court had this to say about the introduction of the search warrant:

> But it is insisted that the affidavit made for the purpose of procuring the search warrant stated that the defendant possessed intoxicating liquor, and which affidavit was introduced at the trial over the objections and exceptions of defendant. It requires no argument to show that the affidavit made to procure the search warrant was and is wholly incompetent to prove the guilt of the defendant on his trial of an indictment procured upon the evidence found by the officers who executed the warrant. The affidavit in this case was relevant only for the purpose of establishing the validity of the search warrant, a preliminary question to the admission of discoveries of the officers who executed it. On the issue of any fact to establish defendant's guilt, it was and is the rankest hearsay, and violates defendant's constitutional right to be confronted face to face with the witnesses against him, and the court erred in admitting the affidavit as evidence to prove defendant's guilt on the trial of the indictment against him.

Furthermore, we have a constitutional question here and the error in admitting this evidence was not harmless beyond a reasonable doubt. *Henry v. Commonwealth*, Ky., 316 S.W.2d 864 (1958).

Further complaint was made by the appellants to the introduction in the evidence of other offenses committed by the defendants-appellants. We think that on the retrial of this case that the Commonwealth's attorney should refrain from attempting to introduce evidence of other offenses. Since we are reversing on another ground we will not discuss these points further.

One other question in this case concerns the seizure of the 1974 Pontiac vehicle that was owned and operated by the appellant, John Turner. There is no order in the record indicating that this automobile was ordered to be sold or that the bond executed by the appellants be forfeited. Therefore, there does not appear to be any appealable order in regard to the 1974 Pontiac automobile.

The judgment of the trial court is reversed for a new trial as to both defendants.

All concur.